# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51929-1-II |
| Respondent, | |
| v. | |
| DEVIN JOHN KONECNY, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Devin John Konecny appeals his exceptional sentence above the standard range arguing it is clearly excessive. Konecny further challenges the imposition of certain legal financial obligations (LFOs).[1] We affirm Konecny's sentence, but remand to the trial court to strike certain LFOs.

### FACTS

As a child, Konecny was exposed to drugs, abuse, and neglect. Konecny began using methamphetamine at 10 years old. He dropped out of high school in the eighth grade. Konecny's grandfather raised him.

Doctors diagnosed Konecny with post-traumatic stress disorder, borderline personality disorder, and severe stimulant use disorder. In 2008, doctors also diagnosed Konecny with multiple sclerosis (MS).

---

[1] The State concedes error.

In 2016, Konecny was listed on Washington's Most Wanted. Acting on a tip, officers approached an apartment building where Konecny was reportedly staying. Konecny repeatedly shot at the officers as they attempted to get Konecny to exit the apartment.

The State originally charged Konecny with ten counts of assault in the first degree with special allegations that he was armed with a firearm at the time of each offense, two counts of intimidating a police officer, and one count of unlawful possession of a firearm. After plea negotiations, Konecny pleaded guilty to ten counts of assault in the second degree including five firearm enhancements.

The parties stipulated to Konecny's criminal history, which resulted in an offender score of 32. Konecny had a standard range sentence on each of the ten assaults of 63-84 months, plus 180 additional months for the five firearm enhancements for a total standard range of 243-264 months. Konecny agreed that the State could recommend an exceptional sentence above the standard range of 348 months. Konecny agreed "to the presence of an exceptional sentence." Clerk's Papers (CP) at 94.

As agreed upon, the State recommended a sentence of 348 months. Konecny argued for 264 months. He emphasized his history of trauma and abuse that left him with limited emotional maturity. Konecny also argued that the trajectory of his MS was unknown and that although he could still walk, he had decreasing mobility. Konecny pointed out that even with the sentence he recommended he had little likelihood of walking out of prison upon his release. Konecny also argued he would likely not be able to work upon release. It would be unlikely that Konecny's grandfather, his primary source of support, would be able to support or assist Konecny upon release.

The sentencing court acknowledged that Konecny did not get "a very fair shake in life," given his history of abuse, neglect, and exposure to drugs at an early age. Report of Proceedings (RP) (June 14, 2018) at 47. The court also acknowledged that even Konecny's sentencing recommendation would ultimately "end up being the equivalent [to] a life sentence." RP (June 14, 2018) at 48. However, the court found that Konecny's "high offender score result[ed] in some current offenses going unpunished." CP at 236; RCW 9.94A.535(2)(c). Based on this finding, the court imposed the State's recommended exceptional sentence above the standard range of 348 months. The court also imposed 18 months of community custody.

Lastly, the sentencing court found Konecny indigent and stated its intent to "waive all of the fines and costs except for the crime victim penalty assessment and the restitution." RP (June 14, 2018) at 49. However, on the judgement and sentence, the court did not cross off the boilerplate language that imposed collection costs, interest on financial obligations, and supervision and community placement fees. Konecny appeals.

ANALYSIS

I.  EXCEPTIONAL SENTENCE

Konecny contends that his exceptional sentence above the standard range was clearly excessive. We disagree.

The sentencing court has discretion to determine the appropriate length of an exceptional sentence when substantial and compelling reasons are present. *State v. Knutz*, 161 Wn. App. 395, 410, 253 P.3d 437 (2011). We will, however, reverse a sentence above the standard range if the sentence imposed is "clearly excessive." RCW 9.94A.585(4). We have "considerable latitude" when assessing whether a sentence is clearly excessive. *State v. Halsey*, 140 Wn. App. 313, 325, 165 P.3d 409 (2007).

A sentence is clearly excessive if (1) it is "'clearly unreasonable,'" i.e., is based on untenable grounds or untenable reasons or (2) it is based on proper reasons, but its length "'shocks the conscience'" in light of the record. *Knutz*, 161 Wn. App. at 410-11 (internal quotation marks omitted) (quoting *State v. Kolesnik*, 146 Wn. App. 790, 805, 192 P.3d 937 (2008)). Konecny argues his sentence was unreasonable, and therefore clearly excessive, because there were several factors that warranted an exceptional sentence below the standard range; the sentence does not further the purpose of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW; and Konecny's sentence was a de facto life sentence.

Initially, Konecny received the sentence he bargained for. In *State v. Ermels*, 156 Wn.2d 528, 533-34, 131 P.3d 299 (2006), the parties entered into a plea agreement where Ermels pleaded guilty to a single charge and agreed that there was a basis for an exceptional sentence on that charge. Ermels did so in exchange for the State's agreement not to file a more serious charge with a significantly longer standard range. Ermels then appealed his exceptional sentence. *Ermels*, 156 Wn.2d at 535. The Supreme Court held that "[b]ecause the portions of [Ermels's] plea agreement stipulating to the facts supporting the exceptional sentence and the legal basis for the exceptional sentence are indivisible from the rest of his plea agreement, he cannot challenge the exceptional sentence without challenging the entire plea." *Ermels*, 156 Wn.2d at 542. Ermels did not challenge his entire plea and the Supreme Court declined to "reframe his argument to do so." *Ermels*, 156 Wn.2d at 542.

Additionally, in *In re Pers. Restraint of Breedlove*, 138 Wn.2d 298, 310, 979 P.2d 417 (1999), the parties agreed that an exceptional sentence was justified in light of the crime. On appeal, the Supreme Court held that the defendant's agreement to an exceptional sentence, alone, provided a substantial and compelling reason for an exceptional sentence. *Breedlove*, 138 Wn.2d at 300.

Similarly, here, Konecny agreed to plead to ten counts of assault in the second degree with only five firearm enhancements. He was originally charged with ten counts of assault in the first degree with ten firearm enhancements, two counts of intimidating a police officer, and one count of unlawful possession of a firearm, which would result in a significantly longer standard range. With the reduced charges, Konecny stipulated to an offender score of 32 and agreed that the State could recommend an exceptional sentence above the standard range of 348 months. He also stipulated that there was "the presence of an exceptional sentence." CP at 94. Because Konecny agreed to an exceptional sentence above the standard range, he cannot now challenge the exceptional sentence without challenging his entire plea, which he does not do.

Nevertheless, Konecny's exceptional sentence above the standard range is not clearly excessive because it is supported by tenable grounds. The court imposed the sentence based on RCW 9.94A.535(2)(c), which allows a sentencing court to impose an exceptional sentence when the "defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." This statute gives the court the "discretion to impose an exceptional sentence if it deems the defendant's sentence will result in

5

'free crimes.'" *State v. Brown*, 193 Wn.2d 280, 285, 440 P.3d 962 (2019). The sentencing court also considered several mitigating factors including Konecny's childhood and his illnesses. The court considered that Konecny's sentence would likely result in a life sentence, which could potentially limit Konecny's opportunity to improve himself. *See* RCW 9.94A.010(5) (one of the purposes of the SRA is to "[o]ffer the offender an opportunity to improve himself or herself"). But, these reasons did not overcome the tenable basis for an exceptional sentence provided in RCW 9.94A.535(2)(c). For this reason, Konecny's sentence is not unreasonable. Thus, Konecny fails to show that his sentence is clearly excessive.

Because Konecny received the sentence he bargained for and because his exceptional sentence above the standard range is not clearly excessive, the sentencing court did not abuse its discretion in imposing Konecny's sentence.

II.      LFOs

After the sentencing court found Konecny indigent, it stated its intent to "waive all of the fines and costs except for the crime victim penalty assessment and the restitution." RP (June 14, 2018) at 49. However, on the judgement and sentence, the court did not cross off the boilerplate language that imposed collection costs, interest on financial obligations, and supervision and community placement fees. Konecny argues that these costs and fees were erroneously imposed. The State concedes that these fees were wrongly imposed. Regarding the interest section, the State argues that section should be revised to relate solely to restitution.

We remand to the court to strike the LFOs that it did not intend to impose and to strike the provision relating to interest on non-restitution LFOs.

We affirm Konecny's sentence, but remand to the trial court to strike certain LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Maxa, C.J.

Glasgow, J.